UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jill S.,[1] <br><br> Plaintiff, <br><br> v. <br><br> Kilolo Kijakazi, <br> *Acting Commissioner of Social Security*, <br><br> Defendant. | Case No. 22-cv-2168 (ECT/DJF) <br><br> REPORT AND RECOMMENDATION |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Jill S. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Decision"). This matter is before the Court on Plaintiff's brief and Defendant's motion for summary judgment.[2] The undersigned considers the filings pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1. For the reasons below, the Court recommends that Plaintiff's request for relief be denied, Defendant's motion for summary judgment (ECF No. 19) be granted, the Decision be affirmed, and this matter be dismissed with prejudice.

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in Social Security matters.

[2] As of December 1, 2022, Social Security Actions under 42 U.S.C. § 405(g) are "presented for decision on the parties' briefs," rather than summary judgment motions. Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), Rule 5. Plaintiff appears to have complied with the new Rules (ECF No. 17), while Defendant followed the old Rules (ECF No. 19).

# BACKGROUND

## I. Plaintiff's Claim

Plaintiff applied for DIB and SSI on November 11, 2020.[3] (Soc. Sec. Admin. R. (hereinafter "R.") 322-23, 338-339.)[4] At that time she was a 34-year-old woman who had completed one year of college and previously worked in restaurants and a call center. (R. 322, 399, 408-413.) Plaintiff alleges she became disabled on August 1, 2020 (R. 338) resulting from Scheuermann's diseases and Schmorl's nodes, a torn rotator cuff, and bipolar disorder. (R. 398.)

## II. Regulatory Background

An individual is considered disabled for purposes of Social Security disability benefits if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, an individual is disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B). "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D).

---

[3] Because the regulations pertaining to DIB claims under Title II of the Act mirror those of SSI claims under Title XVI, the Court cites only the former. *See* 20 C.F.R. §§ 404.1-2127 and 416.101-2227.

[4] The Social Security administrative record (R.) is filed at ECF No. 16. For convenience and ease of use, the Court cites to the record's pagination rather than the Court's ECF and page numbers.

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4). At step one, the claimant must establish she is not engaged in any "substantial gainful activity." *Id.* § 416.920(a)(4)(i). The claimant must then establish she has a severe, medically determinable impairment or combination of impairments at step two. *Id.* § 416.920(a)(4)(ii). At step three, the Commissioner must find that the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing"). *Id.* § 416.920(a)(4)(iii).[5] If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four. The claimant then bears the burden of establishing her residual functional capacity ("RFC") and proving she cannot perform any past relevant work. *Id.* § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). If the claimant proves she is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant can perform such work, the Commissioner will find the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

### III. Procedural History

The Commissioner denied Plaintiff's applications for DIB and SSI initially (R. 190-204) and on reconsideration (R. 207-212). On October 26, 2021, at Plaintiff's request (R. 213-214), an Administrative Law Judge ("ALJ") held a hearing on Plaintiff's applications. Plaintiff and a

---

[5] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected. *See* 20 C.F.R Part 404, Subpart P, App. 1.

vocational expert ("VE") testified at the hearing. (R. at 47-95.) Plaintiff was represented by an attorney. (R. 47.) After the hearing, the ALJ determined that Plaintiff had two severe impairments: (1) degenerative disc disease; and (2) partial interstitial tearing of the left anterior supraspinatus tendon. (R. 34.) He also determined that Plaintiff had several non-severe impairments: (1) carpal tunnel syndrome; (2) migraine headaches; and (3) post-traumatic stress disorder that mildly limited her ability to interact with others. (R. 34-35.) The ALJ found, however, that Plaintiff's impairments did not meet or medically equal any impairment in the Listing. (R. 35- 36.) He then determined that:

> [Plaintiff] has the [RFC] to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The person can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds. The person can occasionally crawl, and frequently reach in all directions with the left upper extremity. The person must avoid frequent exposure to extreme cold and excessive vibration.

(R. 36.) After thoroughly cataloging the mental and physical health evidence in the record, the ALJ classified Plaintiff's past relevant work in restaurants as a pantry goods maker, Dictionary of Occupational Titles ("DOT") #317.684-014, and her work in a call center as a customer service representative, DOT # 205.363-026. (R. 40.) The ALJ determined Plaintiff could perform each position, both as it is generally performed in the national economy and as Plaintiff actually performed it. (R. 40-41.) The ALJ thus concluded that Plaintiff was not disabled. (R. 41.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 17-20), and this lawsuit followed.

## DISCUSSION

I. **Standard of Review**

The Court's review of the Commissioner's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228

4

F.3d 860, 863 (8th Cir. 2000). "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This "threshold … is not high." *Id*. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

**II.    Analysis**

Plaintiff asks the Court to reverse the Decision and remand this matter on the ground that the ALJ's RFC determination is not supported by substantial evidence because the ALJ: (1) failed to consider Plaintiff's left-side impairments in combination with her other impairments; and (2) did not incorporate all of the restrictions set forth in prior administrative findings, despite finding the prior administrative findings persuasive. (ECF No. 17 at 12-22.) For the reasons given below, the Court finds substantial evidence on the record as a whole supports the ALJ's RFC determination and recommends the Decision be affirmed.

**A.    RFC Determination**

The ALJ determined Plaintiff has the RFC to "perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The person can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds. The person can occasionally crawl, and frequently reach in all directions with the left upper extremity. The person must avoid frequent exposure to extreme cold and excessive vibration." (R. 36.)

RFC is defined as the most a claimant can do despite her physical and mental limitations. 20 C.F.R. § 404.1545(a). It is the claimant's burden to prove her functional limitations related to

her RFC. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)); *accord Charles v. Barnhart*, 375 F.3d 777, 782 n.5 (8th Cir. 2004). The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and a claimant's own descriptions of her limitations. *See* 20 C.F.R. § 404.1545(a)(3); *see also*, *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016); *Roberts v. Apfel*, 222 F.3d, 466, 469 (8th Cir. 2000). With respect to vocational experts, "to constitute substantial evidence, a vocational expert's testimony must be based on a hypothetical that captures the concrete consequences of the claimant's deficiencies." *Scott v. Berryhill*, 855 F.3d 853, 857 (8th Cir. 2017) (quotation marks and citation omitted). This includes limitations arising from a claimant's severe and non-severe impairments. *See* 20 C.F.R. §§ 404.1523, 404.1545(a)(2); *see also Newton v. Chater*, 92 F.3d 688, 694-695 (8th Cir. 1996) (explaining that a "hypothetical question must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether jobs exist for the claimant").

"Because a claimant's RFC is a medical question, an ALJ's assessment must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley*, 829 F.3d at 932 (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)). Moreover, the "ALJ is not limited to considering medical evidence, but is required to consider at least some supporting evidence from a professional." *Baldwin*, 349 F.3d at 556. The ALJ must determine the claimant's RFC based on all of the relevant medical and non-medical evidence. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016); 20 C.F.R. § 404.1545(a)(3). Finally, an ALJ's RFC determination is acceptable if it is supported by at least some medical evidence based on the ALJ's independent review of the record. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002).

The ALJ has the responsibility to "develop the record fairly and fully, independent of the claimant's burden to press [her] case." *Cox*, 495 F.3d at 618 (citation omitted). The records are sufficient as long as they describe the claimant's "functional limitations with sufficient generalized clarity to allow for an understanding of how those limitations function in a work environment." *Id.* at 620 n.6. Remand is only required when the claimant "was prejudiced or treated unfairly by how the ALJ did or did not develop the record[.]" *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993).

1. **Plaintiff's Left-Side Impairments**

Plaintiff's first contention is that the ALJ's RFC determination is flawed because he "considered the wrong impairment when evaluating whether Plaintiff had any limitations in the use of her hand." (ECF No. 17 at 13.) Plaintiff argues that after the ALJ determined her carpal tunnel syndrome was non-severe at step two of the sequential analysis, he "essentially concluded" she "did not have any limitations in the use of her left hand." (*Id.* at 13-14.) Plaintiff contends that "it was not the carpal tunnel syndrome that was causing manipulative limitations in the use of [her] hand," but rather a combination of "cervical radiculopathy and shoulder impairment." (*Id.* at 14.) Plaintiff argues the ALJ erred by failing to fully consider her impairments in combination to properly determine what limitations she may have. (*Id.*) Plaintiff cites to a variety of evidence she claims supports a more restrictive RFC, including prior administrative medical findings. (*Id.* at 14-18.)

The Court finds the ALJ properly considered Plaintiff's left-side impairments and that substantial evidence supports his RFC determination. At step two of the sequential analysis, the ALJ determined that Plaintiff's partial interstitial tearing of her left anterior supraspinatus tendon was a severe impairment. (R. 34.) At step four of the sequential analysis, the ALJ discussed in

detail Plaintiff's left shoulder pain. (R. 37.) He found that while this and Plaintiff's other medically determinable impairments could reasonably be expected to cause her alleged symptoms, Plaintiff's statements about the intensity, persistence and limiting effects of those symptoms were not generally consistent with the medical evidence and other evidence in the record. (R. 37.) The ALJ observed that while Plaintiff reported being unable to use her left upper extremity, this was not documented in the record, and that at most, the record reflected only reduced strength. (R. 39.)

Plaintiff's alleged disability onset date is August 1, 2020. (R. 338.) The ALJ noted that in early August 2020, Plaintiff had tenderness throughout her left shoulder and reduced range of motion but intact sensation. (R. 37, citing R. 1000.) The ALJ also noted that later in August 2020, Plaintiff experienced severe pain in her left shoulder and in the back of her neck, and that upon exam, she had tenderness to palpation in her both cervical spine and left sided paraspinal muscles and latissimus dorsi. (R. 37, citing R. 555-556.) The ALJ observed that although Plaintiff also had some decreased sensation to light touch in her radial and median nerve distribution at that time: (1) she had full strength in her left lower extremity; (2) her strength was four out of five in the left upper extremity but could have been impacted by Plaintiff's lack of effort; (3) there was no significant disc herniation or canal narrowing concerning for spinal cord compression syndrome; and (4) Plaintiff's provider ultimately determined she had a normal range of motion. (R. 37, citing R. 555-559.)

The ALJ also noted that in December 2020, Plaintiff suffered from cervical radiculopathy and left rotator cuff syndrome, but observed: (1) an MRI showed only mild findings, including mild left neuroforaminal stenosis; (2) Plaintiff's sensation was intact; (3) there was some suggestion of reduced strength in her upper left extremity, but her strength was initially noted as full; and (4) there was inconsistency as to whether Plaintiff's left shoulder was the source of her

pain . (R. 38, citing R. 987-992.)  He also observed that in early 2021, Plaintiff reported she had not gone to acupuncture treatments in a long time, she went to only two physical therapy appointments, and she was not taking any medication . (R. 39, citing R. 1051-1052.)  The ALJ further noted that in February and June 2021, Plaintiff reported her pain improved while she was pregnant. (R. 38, citing R. 1041, 1163.)

Finally, the ALJ considered the prior administrative medical findings of state-agency physicians who opined at both the initial and reconsideration levels that Plaintiff was capable of light work with postural reaching and environmental restrictions. (R. 39.)  As to environmental restrictions, the physicians opined that Plaintiff should avoid all shoulder injury hazards including manual handling, working above shoulder height, repetitive work, vibration, and working in awkward positions. (R. 105-106, 154-157.)  The ALJ agreed that the record supported the prior administrative medical experts' findings on Plaintiff's ability to perform light work and their recommended postural and reaching limitations, but cited evidence contradicting the recommended environmental restrictions. (R. 39, noting that by 2021 Plaintiff was not taking any medication, she was not actively pursuing acupuncture treatment or physical therapy, and her pain had improved.)

The ALJ's comprehensive discussion of Plaintiff's left-side impairments in his RFC analysis clearly belies Plaintiff's argument that he based his RFC findings solely on Plaintiff's non-severe carpal tunnel syndrome or failed to consider the totality of her impairments.  Moreover, the ALJ did limit Plaintiff to frequent reaching in all directions with her left upper extremity, but did not find the record supported any greater limitations or restrictions.  The ALJ appropriately supported his RFC findings with citations to the record evidence, including evidence that contradicted the greater limitations recommended in the prior administrative medical findings.

To the extent there may be evidence in the record that reasonably supports a more restrictive RFC, it is not the Court's role to reweigh the evidence. *Schmitt v. Kijakazi*, 27 F.4d 1353, 1361 (8th Cir. 2022) ("Despite [Plaintiff's] dissatisfaction with how the ALJ weighed the evidence, it is not this Court's role to reweigh that evidence"). While Plaintiff may disagree with how the ALJ weighed the evidence in determining her RFC, the Court finds that the ALJ properly reviewed the record, supported his findings with substantial evidence, and appropriately found that Plaintiff failed to meet her burden at step four. Because the ALJ properly considered the record as a whole and substantial evidence supports the ALJ's findings related to Plaintiff's RFC, the Court must affirm it. *Perks*, 687 F.3d at 1091. The Court accordingly recommends that the Decision be affirmed to the extent Plaintiff challenges the ALJ's RFC determination related to her left-side impairments.

### 2. Prior Administrative Findings

Plaintiff's second contention echoes her previous argument that the ALJ wrongly omitted from her RFC certain physical limitations recommended in prior administrative medical findings, but also includes the ALJ's alleged improper omission of a mental limitation noted in her prior administrative psychological findings. (ECF No. 17 at 18-22.) Plaintiff claims that because the ALJ found some or all of the prior administrative findings persuasive, he should have included all of their recommended limitations in her RFC. (*Id.*) Plaintiff contends the ALJ wrongly "substituted his lay opinion for that of medical sources, all of whom opined that Plaintiff had substantially greater limitations than the ALJ." (*Id.* at 21.)

Under regulations revised in 2017, an ALJ cannot defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding, including those from medical sources. 20 C.F.R. § 404.1520c (a); *see also Bowers v.*

*Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c), "treating physicians are [no longer] entitled to special deference").  When evaluating the persuasiveness of medical opinions and prior administrative findings, an ALJ must consider: (1) whether they are supported by objective medical evidence; (2) whether they are consistent with other medical sources; (3) the relationship the source has with the claimant; (4) the source's specialization; and (5) any other relevant factors.  *Bowers*, 40 F.4th at 875 (citing 20 C.F.R. § 404.1520c(c)).  The first two factors—supportability and consistency—are the most important, and the ALJ generally need only explain how he considered those two factors.  20 C.F.R. §§ 404.1520c(a), 404.1520c(b)(2).

    The ALJ stated that he found "the prior administrative medical findings persuasive." (R. 39.)  He similarly found "the prior administrative psychological findings persuasive." (R. 39.) But the ALJ then went on to explain which parts of the administrative medical and psychological findings he found persuasive, and why. (R. 39.)  While the ALJ more accurately could have stated that he found the prior administrative findings "mostly persuasive," the rest of his analysis makes that clear.  As discussed above, the ALJ explained that he was persuaded by the state-agency physicians' opinions regarding Plaintiff's physical impairments only to the degree that they were consistent with and supported by record evidence.  For example, the ALJ did not agree with their recommended environmental restrictions because by early 2021, Plaintiff was not taking any medication, she was not actively pursuing acupuncture treatment or physical therapy, and her pain had improved. (R. 39, *see also* R. 1041, 1051-1052, 1163.)  The ALJ thus used specific record evidence to support and explain why he was not persuaded that any limitations beyond those he included in Plaintiff's RFC were necessary.  (R. 37.)

    The ALJ likewise considered the prior administrative psychological findings by state-agency professionals who opined at both the initial and reconsideration levels that Plaintiff did not

11

have a severe mental health impairment. (R. 37.) The state-agency professionals found Plaintiff suffered from non-severe "depressive, bipolar, and related disorders" and a resulting mild limitation in her ability to adapt or manage herself. (R. 106-108, 150-152.) The ALJ determined these findings were consistent with and supported by record evidence. (R. 37.) At step two the sequential analysis, the ALJ found Plaintiff's non-severe mental health impairment mildly limited her ability to interact with others. (R. 34-35.) He did not comment on the state-agency professionals' alternative finding that Plaintiff's non-severe mental health impairment actually limited her ability to adapt or manage herself. But the ALJ did cite substantial record evidence in his RFC analysis reflecting that he considered Plaintiff's mental health impairment when determining the most Plaintiff was able to do despite her limitations. For example, he noted Plaintiff's hearing testimony related to her interaction with others. (R. 37, citing R. 57-58, 81-83.) The ALJ also noted that Plaintiff had not kept up with her mental health visits, only recently started therapy, her therapist described her as cooperative with normal findings, Plaintiff stated her mood was stable, and her affect was normal and bright. (R. 39-40, citing R. 727, 1040-1041, 1164.)

Plaintiff argues that based on the prior administrative psychological findings and the ALJ's own finding that Plaintiff was mildly limited in her ability to interact with others, the ALJ should have included some sort of social interaction limitation in her RFC. (ECF No. 17 at 20-21.) Plaintiff contends the ALJ "simply removed" the limitations from his RFC assessment without any explanation and "did not explain how they might somehow be accounted for in the limitations that were assessed." (*Id.* at 21.) Plaintiff thus argues the ALJ's RFC analysis is not supported by substantial evidence because it does not allow for a meaningful judicial review or for Plaintiff to understand the basis on which her application was denied. (*Id.* at 23.)

The Court disagrees. The ALJ's detailed RFC analysis belies Plaintiff's contention that he wrongly omitted any limitation from her RFC. Moreover, the ALJ was not required to defer or give any specific evidentiary weight to any prior administrative finding. 20 C.F.R. § 404.1520c. To the extent Plaintiff argues the ALJ failed to consider her non-severe mental health impairment and resulting limitation, his RFC analysis is laden with record evidence conveying he evaluated Plaintiff's mental health but determined no additional limitations were necessary. (*See e.g.*, R. 37, citing R. 57-58 , 81-83 (Plaintiff's testimony related to her social interaction with others); R. 39-40, citing R. 727, 1040-1041, 1164 (evidence reflecting poor follow-through with mental health treatment and overall stable mental health).) That Plaintiff disagrees with the ALJ's findings does not alter the fact that the ALJ properly evaluated the evidence before him, including the prior administrative findings. *Schmitt*, 27 F.4d at 1361.

The Court finds the ALJ's RFC analysis is properly supported by substantial evidence, clear enough to allow for meaningful judicial review, and presents a clear logical bridge between the record evidence and Plaintiff's RFC. *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (requiring a logical explanation between Plaintiff's symptoms and ability to work); *Lee R. v. Kijakazi*, No. CV 20-1989, 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (same). Because the ALJ properly considered the record as a whole and substantial evidence supports the ALJ's findings related to Plaintiff's RFC, the Court must affirm it. *Perks*, 687 F.3d at 1091. The Court accordingly recommends that the Decision be affirmed to the extent Plaintiff challenges the ALJ's RFC determination related to his consideration of prior administrative findings.

## CONCLUSION

For the foregoing reasons, the Court recommends that Plaintiff's request for relief be denied, Defendant's Motion for Summary Judgment be granted, the Commissioner's Decision be affirmed, and this matter dismissed with prejudice.

## REPORT AND RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS RECOMMENDED** that:

1. Plaintiff's request for relief (ECF No. [17]) be **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. [19]) be **GRANTED**;

3. The Decision be **AFFIRMED**; and

4. Plaintiff's Complaint (ECF No. [1]) be **DISMISSED WITH PREJUDICE**.


Dated: November 2, 2023                    *s/ Dulce J. Foster*
                                           DULCE J. FOSTER
                                           United States Magistrate Judge

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).